Robert M. DEUTSCHMAN and Stephen A. Caffrey, Plaintiffs,

v.

BENEFICIAL CORPORATION, Finn M.W. Caspersen, and Andrew C. Halvorsen, Defendants.

Civ. A. No. 86–595 MMS.

United States District Court, D. Delaware.

April 19, 1991.

Robert D. Goldberg, of Biggs & Battaglia, Wilmington, Del., Richard B. Dannenberg, Richard Bemporad, David C. Harrison, and Jill Rosell, of Lowey, Dannenberg, Bemporad, Brachtl & Selinger, P.C., of counsel, New York City, for plaintiff Robert M. Deutschman.

Irving Morris, and Kevin Gross, of Morris, Rosenthal, Monhait & Gross, P.A., Wilmington, Del., for plaintiff Stephen A. Caffrey.

Charles F. Richards, Jr., Kevin G. Abrams, and Michael J. Feinstein, of Richards, Layton & Finger, Wilmington, Del., Dewey, Ballantine, Bushby, Palmer & Wood, of counsel, New York City, for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This securities fraud class action was filed by the named plaintiff, Robert M. Deutschman, on December 22, 1986. The amended complaint alleges causes of action for violation of federal securities laws, specifically sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C.A. §§ 78j(b) & 78t(a) and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder and for common law negligent misrepresentation against Beneficial Corporation ("Beneficial") and two of its officers, Finn M.W. Caspersen and Andrew C. Halvorsen. Essentially, Deutschman alleges that during the late summer and autumn of 1986 defendants Caspersen and Halvorsen caused to be issued on behalf of Beneficial certain misleading statements which artificially inflated the market price of Beneficial common stock. For a more detailed summary of the allegations asserted against defendants, see *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 503–04 (3d Cir.1988), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D.Del.1990). Deutschman originally sought to bring suit on behalf of all persons who purchased the common stock of Beneficial or call options thereon during the period August 21, 1986 through February 27, 1987 and have or will sustain losses as a result.

In an Opinion and Order issued September 21, 1990, the court bifurcated the proceedings so that the federal securities fraud issues of misrepresentation, materiality, and scienter and the common law is-

sues of misrepresentation and negligence will be tried first. The court at the same time tentatively certified two subclasses consisting of:

> [A]ll persons who purchased the common stock of Beneficial during the period August 21, 1986 through December 16, 1986, or who purchased call option contracts thereon during the Class Period, and have or will sustain losses as a result. Excluded from the Class are the defendants herein, members of the immediate family of each of the individual defendants, any entity in which any of the defendants has a controlling interest, and the legal representatives, heirs, successors or assigns of any of the defendants (referred to hereinafter as "Subclass A"); and

> [A]ll persons who purchased the common stock of Beneficial during the period December 17, 1986 through February 27, 1987, or who purchased call option contracts thereon during the Class Period, and have or will sustain losses as a result. Excluded from the Class are the defendants herein, members of the immediate family of each of the individual defendants, any entity in which any of the defendants has a controlling interest, and the legal representatives, heirs, successors or assigns of any of the defendants (referred to hereinafter as "Subclass B").

*Deutschman,* 132 F.R.D. at 383. Deutschman was designated class representative for Subclass A. Subclass B was tentatively certified without a class representative on the assumption that Stephen A. Caffrey, who was granted leave to intervene in the litigation, would move in a timely manner to be designated representative of Subclass B. The court declined to order notice sent to the class members until the identity of the representatives of the two subclasses could be resolved.

█ In its September 21, 1990 Opinion and Order, the court granted Caffrey's motion to intervene, but declined to grant him class representative status at that time so as to give defendants an opportunity to brief the issue. On October 5, 1990, Caffrey formally moved for designation as a class representative for purchasers of Beneficial common stock in both subclasses. (Dkt. 112) Defendants oppose Caffrey's motion for designation as a class representative. They argue that Caffrey cannot bring an individual federal securities fraud claim against them because he did not "purchase" Beneficial common stock within the meaning of section 10(b) and Rule 10b–5 during either subclass period. In the alternative, defendants assert that Caffrey's claims are not typical and that he is subject to a unique defense likely to predominate over common issues at trial. Caffrey's motion for designation as a class representative will be denied, but not for the reasons advanced by defendants.

The two subclasses have already been certified. In order to qualify as a class representative, Caffrey must satisfy the court that (i) his claim is typical of the claims of the members of the subclasses, Fed.R.Civ.P. 23(a)(3); and (ii) he will fairly and adequately protect the interests of the subclasses, Fed.R.Civ.P. 23(a)(4). 1 H. Newberg, *Newberg on Class Actions* § 3.13 at 163 (1985) (the requirements of typicality and adequate representation focus on the desired characteristics of the class representative). Phrased differently, Caffrey must demonstrate that he has individual standing to bring suit and that his claims are factually or legally similar to the claims of other subclass members so that by pursuing his own self-interest he will further the interests of the subclasses. *Id.* § 3.13 at 166.

Caffrey has not shown that he will "fairly and adequately protect the interests" of the members of Subclasses A or B as the subclasses have been defined by the court. Caffrey filed for designation to represent purchasers of Beneficial common stock only. His attorney represented at oral argument that Caffrey does not wish to represent the call option purchasers. Additionally, Caffrey's attorney indicated that Caffrey would not pursue an individual negligent misrepresentation claim. In sum, Caffrey has represented to the court that he declines to bring all of the class claims and that he does not wish to repre-

sent all of the class members. Fed.R. Civ.P. 23(a)(4) requires that "the representative ... will fairly and adequately protect the interests of the class." Because he has declined to represent some class members and is not pursuing some of the claims brought by the subclasses, Caffrey has not satisfied the prerequisites of class representative status. Subclass A will continue to be represented by named plaintiff Robert Deutschman but not by Caffrey. With respect to Subclass B, the court will deny Caffrey representative status at this time. The court will afford 45 days for another member of Subclass B to move for designation as the named plaintiff. If no member of Subclass B comes forward within 45 days, the court will entertain a motion pursuant to Fed.R.Civ.P. 23(c)(1) to decertify or to redefine Subclass B and/or strike the negligent misrepresentation claim with respect to the members of Subclass B provided such motion is made within 55 days of the issuance of the Order on this Opinion. *See Kramer v. Gold Medal Baking Co.,* 17 Fed.R.Serv.2d 488 (E.D.Pa.1973); *Manual for Complex Litigation 2d,* 1 Moore's Federal Practice ¶ 30.15 at 205 & n. 32 (1986); 2 H. Newberg, *Newberg on Class Actions* § 7.47 at 86.

■ Having held Caffrey should not be designated a class representative for either subclass as presently defined, this Opinion could properly end here. However, defendants' arguments raise two additional issues. The first is whether the court should reconsider its order granting Caffrey leave to intervene in this suit. In its September 21 Opinion, the court granted Caffrey's Motion to Intervene pursuant to Fed.R. Civ.P. 24(b) in part because it found that Caffrey had a claim in common with the members of both subclasses. Defendant's assertions that Caffrey is not a class member and has no federal securities fraud claim against them persuade the court that it should undertake at this time to deter-

mine whether Caffrey may remain an intervenor in this case. Because the issue of whether Caffrey has a claim against defendants under the federal securities laws has been fully briefed and argued as part of Caffrey's motion, there is no prejudice to the parties in re-examining whether Caffrey has a claim and should remain an intervenor. Upon consideration of the cases cited by the parties in their briefing and oral argument, the court concludes that Caffrey can assert an individual claim against defendants pursuant to section 10(b) and Rule 10b–5. As a consequence, Caffrey continues to have a question of law or fact in common with the members of the class and will be permitted to remain an intervenor in this litigation. As an intervenor, Caffrey himself may at the appropriate time bring simultaneous motions to redefine Subclass B as discussed above and to be the designated representative of a redefined Subclass B.

Caffrey acquired his shares of Beneficial common stock through his participation in the Beneficial Corporation Employees' Stock Purchase Plan ("the Plan"). Employees who participate in the Plan sign authorization cards permitting the Plan administrators to deduct certain sums from each of their paychecks. At the beginning of each month, the administrators of the Plan pool the payroll deductions of all employees from the preceding month and deliver the funds to a broker who uses the money to purchase Beneficial common stock on the open market. Each employee's stock account is credited with shares at the end of the month in which the stock purchases were made. The number of shares credited each employee is based upon the dollar amount of his payroll deduction the preceding month and the average price paid for the shares purchased on behalf of the Plan in that month. McCardle Affidavit at ¶¶ 3–4.[1] Once an employee executes the initial authorization card, the

---

1. Plan participants also receive a non-vested share for each vested share credited to their stock accounts. These non-vested shares vest (1) at the end of three years after they are credited, provided the participant remains a Beneficial employee, or (2) if the Board of Directors adopts a resolution to provide for vesting of these shares following an announcement by a third party that it intends to effect a business combination with Beneficial. McCardle Affidavit at ¶ 5.

payroll deductions and stock purchases automatically occur each month without further authorization or participation by the employee unless and until the employee modifies or terminates his participation in the Plan by signing another authorization card. McCardle Affidavit at ¶ 3.

On August 19, 1986—two days prior to the starting date of the first subclass period—Caffrey signed an authorization card to commence his participation in the Plan. McCardle Affidavit, ¶ 7 & Exh. 3. By signing the card, Caffrey authorized the administrators of the Plan to make a $25 deduction from each of his paychecks and to use the deductions to make monthly purchases on his behalf of Beneficial common stock in the open market. The initial $25 deduction from Caffrey's paycheck occurred in October 1986. Caffrey was credited with 1.0464 shares of Beneficial common stock in November 1986, 0.8881 shares in December 1986, 0.8475 shares in January 1986, and 0.132 shares in February 1986, for a total of 3.5952 shares during the class period. Caffrey neither modified nor terminated his participation in the Plan at any time after he signed the initial authorization card on August 19, 1986. Caffrey left the employ of Beneficial in October 1987 without formally terminating his participation in the Plan or inquiring into his stock holdings. When the Plan administrators learned through internal Beneficial communications that Caffrey was no longer a Beneficial employee, Caffrey's vested shares were sent to him and his participation in the Plan was terminated. McCardle Affidavit at ¶ 8.

In order to assert a claim under section 10(b) or Rule 10b–5, Caffrey must prove that defendants "i) made misstatements or omissions; ii) of material fact; iii) with scienter; iv) in connection with the purchase or sale of securities; v) upon which [he] relied; and vi) that reliance proximately caused [his] injury." *In re Phillips Petroleum Securities Litigation*, 881 F.2d 1236, 1244 (3d Cir.1989); *see also Peil v. Speiser*, 806 F.2d 1154, 1160 (3d Cir.1986); *Deutschman*, 132 F.R.D. at 368. Under the *"Birnbaum* rule," only persons who actually purchased or sold securities may bring suit under Rule 10b–5. *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), *approved by Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S.Ct. 1917, 1931–32, 44 L.Ed.2d 539 (1975). Defendants assert that Caffrey cannot assert an individual claim under section 10(b) and Rule 10b–5 because he did not "purchase," within the meaning of the statute and Rule 10b–5, any Beneficial common stock during the class period.

Defendants argue that the payroll deductions and concomitant credits to Caffrey's stock account during October 1986–February 1987 were not "purchases" of Beneficial securities as that term has been defined by Rule 10b–5 jurisprudence. Rather, according to defendants, Caffrey made his one and only purchase of Beneficial common stock when he signed the authorization card on August 19, 1986—two days prior to the commencement of the first subclass period. Consequently, they assert, Caffrey did not purchase Beneficial securities during the class period and cannot bring an individual claim against them under the federal securities laws. Defendants base their assertions on language in the case law to the effect that "[a] 'purchase' occurs each time an investor takes action representing a new decision to invest." *Bruan v. Lipuma* [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,612 at 97,856, 97,858, 1990 WL 148411 (E.D.N.Y. Sept. 19, 1990); *see also Ahern v. Gaussoin*, 611 F.Supp. 1465, 1478 (D.Ore.1985); *Rush v. Oppenheimer & Co.*, 592 F.Supp. 1108, 1111 (S.D.N.Y.1984), *vacated in part on other grounds*, 596 F.Supp. 1529 (S.D.N.Y. 1984). Defendants also rely on statements by various courts to the effect that mere retention of previously purchased securities, which retention is induced by misrepresentations made after the securities were acquired, is not a purchase made in connection with fraud within the meaning of the *Birnbaum* rule. *Rush*, 592 F.Supp. at 1112; *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1227 (S.D.N.Y.1982).

The federal securities laws qualify the definition of "purchase" with the phrase "unless the context otherwise requires." 15 U.S.C.A. § 78c(a)(13). Consequently, the court should take a contextual approach and should consider the facts of a particular transaction to determine whether the fraud was "in connection with" a purchase of securities and whether application of federal securities laws to the transaction will further fundamental fairness in the securities marketplace. *Securities & Exchange Comm'n v. National Sec. Inc.*, 393 U.S. 453, 466–67, 89 S.Ct. 564, 571–72, 21 L.Ed.2d 668 (1969); *Goodman v. Epstein*, 582 F.2d 388, 410–11 (7th Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979).

Defendants assert that Caffrey's passivity in allowing the Plan to work "automatically" by making deductions and crediting his stock account, without his participation, evidences a failure on Caffrey's part to make any investment decisions during either subclass period. *See* Deposition of Stephen Caffrey (Dkt. 119) at 41 (Caffrey's sole reason for participating in the Plan was to gain some ownership in his employer); 43–44 (subsequent to signing the authorization card, Caffrey made no decision regarding his participation in the Plan until he sold his shares in October 1988); 58 (Caffrey has no actual memory of awareness of the specific misrepresentations); and 58–59 (Caffrey took no action in response to the misrepresentations). As previously stated, defendants take as their definition of a "purchase" a situation wherein an investor takes action representing a new decision to invest. Defendants' definition is unhelpful, however, because it fails to define adequately what constitutes an investment decision.

In order for there to be a purchase, "a significant change in the nature of the investment or in the investment risks" must occur. *Keys v. Wolfe*, 709 F.2d 413, 417 (5th Cir.1983); *Ahern*, 611 F.Supp. at 1478; *Freschi*, 551 F.Supp. at 1227. The most obvious change in the nature or risks of an investment would be where the investor "give[s] up specific consideration in return for a separate financial interest with the characteristics of a security." *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 559, 99 S.Ct. 790, 796, 58 L.Ed.2d 808 (1979); *see also Ahern*, 611 F.Supp. at 1478 (citing *Ingenito v. Bermec Corp.*, 441 F.Supp. 525 (S.D.N.Y.1977) ("[A]n exchange is a purchase where it places an investor's money at additional risk"). In this case, Caffrey clearly exchanged value—his payroll deductions—for securities in the form of vested shares of Beneficial common stock credited to his stock account. With each month that he participated in the Plan, Caffrey's holdings in Beneficial common stock increased, as did his vulnerability to manipulation of the market price by plaintiffs.

Of course, whether a purchase or an investment decision has been made also requires the putative investor to exercise or, at the very least to possess the ability to exercise, some discretion with respect to the payment of funds or acquisition of securities. In the parties' briefing, much discussion in this regard revolved around the so-called "investment decision doctrine" as set forth in this District by Judge Wright in *Hill v. Equitable Bank, Nat'l Ass'n*, 599 F.Supp. 1062, 1072 (D.Del.1984):

> In general, under the federal securities laws, a purchase or sale of securities occurs on the date that a party enters into a binding commitment to undertake a securities transaction, even though full performance of the transaction does not occur until a later date. Conversely, however, if a party enters into an agreement to undertake a securities transaction but, prior to full performance of the transaction, the party possesses the power to terminate it, the party may be viewed as making an investment decision at each point the party possesses the power to terminate the transaction but chooses to go forward. Each such investment decision may be viewed as a purchase or sale of securities separate and apart from the initial agreement to undertake the transaction. (citation omitted).

In *Hill,* the plaintiffs purchased shares in a limited partnership by entering into an agreement calling for a downpayment and subsequent installment payments. *Id.* at 1067–68. Judge Wright eventually held that the installment payments did not constitute separate purchases because plaintiffs were not free to forego making the payments. Plaintiffs had bound themselves to make the payments when they initially entered into the agreement to purchase the partnership shares and were not free subsequently to avoid going forward with the transaction. In other words, the payments were not discretionary. *Hill v. Equitable Bank,* 655 F.Supp. 631, 638–39 (D.Del.1987), *aff'd,* 851 F.2d 691 (3d Cir. 1988), *cert. denied sub nom Data Controls North, Inc. v. Equitable Bank Nat'l Ass'n,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). By paying the installments when due plaintiffs were not engaging in new investments but rather paying an already existing obligation. *Id.*

A similar situation occurred in *Helman v. Murry's Steaks, Inc.,* 742 F.Supp. 860 (D.Del.1990). In that case, plaintiffs entered into a binding commitment, called the "Definitive Agreement," to sell shares of a family-owned and operated retail food business. The sale was to be consummated in two closings. *Id.* at 865–67. Because the plaintiff obligated herself to sell her shares when she entered into the Definitive Agreement, the court found that the two closings did not constitute separate "sales" for purposes of the federal securities laws. *Id.* at 869–73. The court stated that the key factors were (i) whether the parties were obligated to perform at the time they entered the sale agreement, and (ii) whether the parties had the power to terminate the transaction after they had entered into the Definitive Agreement. *Id.* at 870 ("[I]f the parties enter into an agreement to purchase securities into the future and the parties possess the power to terminate the agreement, any additional investment of money may be seen as a new investment decision and thus a new purchase or sale"); *id.* ("The operative factor … was the absence of the ability of the parties to terminate the transaction after they had committed to the agreement") (citation omitted); *id.* at 869–70 ("[O]nce the parties make the investment decision and enter into a binding commitment to perform the transaction, the purchase and sale is complete"); *id.* at 873 ("[T]he operative question was whether the purchaser and seller were obligated to perform at the time they entered the agreement").

The transactions in both *Hill* and *Helman* may be described as "one-shot deals," *Goodman,* 582 F.2d at 412, because both cases involved a contract for the purchase of a specific number of securities at a specified price which was consummated over a period of time. The case at bar cannot be so described. Caffrey's participation in the Plan is not a single transaction but rather a series of transactions. He is not entitled to a specific number of securities at a specific price over time. Rather, his participation is more analogous to a monthly offer by Caffrey to purchase whatever amount of Beneficial common stock he can obtain at market price for the dollar amount of his monthly payroll deduction.

The transactions in the case at bar also differ from those in *Hill* and *Helman* in that Caffrey had the power to terminate his participation in the plan at any time upon thirty days' notice. McCardle Affidavit at ¶ 3 & Exh. 3. As stated above, Caffrey's ability to terminate his monthly payroll deductions and concomitant purchases of Beneficial shares make his participation in the Plan discretionary, a consideration which was found to be an important factor by both the *Hill* and *Helman* courts in determining whether there was a single purchase or a series of purchases.

The case at bar is more closely analogous to the transactions in *Goodman v. Epstein,* 582 F.2d 388 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). In that case, the Court of Appeals for the Seventh Circuit found that contributions by limited partners in response to the partnership's capital calls constituted separate purchases of securities for purposes of the federal securities laws. The court found that the transaction in *Goodman*

was not a "one-shot deal" for the purchase of limited partnership shares but rather an ongoing relationship. The court also found that the limited partners had the power to avoid contributing in response to the partnership's capital calls by dissolving the partnership. Finally, the court found that the purposes of the federal securities laws would be furthered by their application to the transactions at issue in that case.

Defendants urge that Caffrey's passivity makes it illogical for the court to hold that the monthly paycheck deductions and credits to his stock account were purchases. On the contrary, it would be illogical to hold that a monthly exchange of value in terms of dollars for Beneficial shares at market price could be anything other than purchases of securities. The court notes that defendants have been unable to point to any cases in which an automatic purchasing arrangement that involved additional dollars for additional securities was held to constitute something other than the purchase of securities. In fact, while the court has been unable to unearth any cases directly on point, it notes that in *In re General Public Utilities Securities Lit.*, [1983–84 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,566 at 97,225, 97,226, 1983 WL 22362 (D.N.J.1983), the class certified consisted of "all person[s] ... who purchased shares of common stock of GPU at any time during the period from February 8, 1974 to April 1, 1979, inclusive. The class includes those persons purchasing pursuant to GPU's dividend reinvestment and stock purchase plans, employee stock ownership plans and subscription offers, as well as those persons purchasing on the open market." The court also notes that Caffrey's participation in the Plan is analogous to participation in an automatic dividend reinvestment program, where a stockholder's dividends are automatically reinvested in additional shares which are credited to the participant. The courts appear to agree that participants in automatic dividend reinvestment programs meet the threshold requirement of standing to bring suit pursuant to the federal securities laws. *See In re Consumers Power Company Securities Lit.*, 105 F.R.D. 583, 590 (E.D. Mich.1985) (class in a securities fraud case included participants in dividend reinvestment program); *In re General Public Utilities Lit., supra* (same); *Ross v. Warner*, [1980–81 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,735 at 98,854, 98,856 (S.D.N.Y. Dec. 11, 1980) (same).

Defendants argue that Caffrey's exchange of value for Beneficial shares and his ability to terminate his participation in the Plan are insufficient to constitute a "purchase" because he never exercised his discretion nor made any decision regarding his participation in the Plan during either subclass period. Defendants' argument, taken to its logical end, would mean that a Plan participant who, like Caffrey, took no action during either subclass period, but who, upon learning of the alleged misrepresentations the day after the class period closed terminated his participation in the Plan, would not be protected by the securities laws because he took no action during the subclass periods.

Defendants assert that Caffrey's failure to "purchase" is demonstrated by the fact that his primary purpose in participating in the Plan was to acquire shares of his employer. This purpose does not deprive Caffrey of the protection of the securities laws. The fraud on the market theory is premised upon the notion that purchasers of securities may rely upon the integrity of the market price of the securities. The court finds it difficult to believe at this stage of the proceedings that Caffrey, even though his motive was not related to pecuniary gain from investment, would have participated in the Plan had he been aware that his payroll deductions were used to purchase shares at artificially inflated prices. Moreover, the protection of the securities laws is not extended solely to those who purchase purely for investment or speculative reasons. Rather, the securities laws protect all investors, regardless of their reasons for purchasing securities, so long as they actually rely upon the representations made or may be presumed to rely upon the integrity of the market price. For example, an investor motivated solely by patriotism who purchased shares in a

defense contractor during the recent war in the Persian Gulf in order to show support the war effort would still be protected by the securities laws so long as he may be presumed to have relied on the integrity of the market price of the stocks purchased. The court holds that, taking the facts as alleged, Caffrey's participation in the Plan resulted in purchases of Beneficial securities during the class period.

In sum, the court finds that Caffrey's participation in the Plan constituted monthly purchases of Beneficial securities from November 1986—February 1987. Consequently, Caffrey has standing to pursue his individual claims under section 10(b) and Rule 10b–5 and may remain an intervenor in this case. First, Caffrey each month clearly exchanged valuable consideration in the form of the deductions from his paycheck for securities in the form of the vested shares credited to his stock account. Second, the monthly deductions from Caffrey's paychecks and the credits to his stock account caused the nature and risks of his holdings of Beneficial common stock to change each month. Because Caffrey was credited with additional vested shares each month, his holdings increased each month, as did his vulnerability to manipulation of the price of Beneficial stock by misrepresentations on the part of defendants. Third, the fact that Caffrey had the ability to terminate his participation in the Plan upon thirty days' notice means that he had discretion over whether the Plan administrators could take deductions from his paycheck and purchase Beneficial common stock to be credited to his stock account. As a consequence, Caffrey's failure to exercise his power to terminate his participation in the Plan, which he possessed each month, may be viewed as action resulting in a series of investment decisions. Finally, application of the federal securities laws to this transaction would further the goal of fundamental fairness in the securities markets and protection of investors from fraud and market manipulation by insiders. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976) (1934 Act was intended principally to protect investors from manip-

ulation of stock prices); *Deutschman*, 841 F.2d at 506 (the underlying purpose of the 1934 Act was the protection of actual participants in the securities markets); *see also National Securities, Inc.*, 393 U.S. at 463 & 467, 89 S.Ct. at 570 & 572 (purpose of 1934 Act is to protect security holders from fraudulent misrepresentation and the court should inquire whether this transaction is the type which was meant to be forbidden by the securities laws).

In addition to their arguments in opposition to Caffrey's motion to be designated a class representative, defendants urge the court to revisit the issue of whether the named plaintiff, Robert Deutschman, is a suitable representative to pursue the negligent misrepresentation claim on behalf of Subclass A. Answering Brief at 18 n. 8 (Dkt. 122). Essentially, defendants seek reargument and reconsideration of the court's September 21 ruling. The court notes that the time for filing a motion for reargument or reconsideration of all or part of the September 21 ruling has long since past. Fed.R.Civ.P. 59; Local Rule of Civil Practice for the United States District Court for the District of Delaware 3.3. Nevertheless, the court may alter or amend certification of a class action at any time prior to a decision on the merits. Fed.R. Civ.P. 23(c)(1).

The court declines to address at this time defendants' contention regarding plaintiff Deutschman's ability to bring a negligent misrepresentation claim on behalf of Subclass A. First, a motion to reconsider or reargue issues concerning Deutschman's representation of Subclass A is entirely inappropriate for inclusion in a footnote in briefing on a motion in which Deutschman has not participated. Second, defendants have presented nothing "new or significant ... which would change the prior opinion in any respect." *United States v. Wolfson*, 294 F.Supp. 279, 279 (D.Del.1968). Defendants raise once again their questions concerning the issue of Deutschman's reliance. That issue was considered and addressed in the September 21 opinion. *Deutschman*, 132 F.R.D. at 379–80. "Reargument should not be granted where

it would merely 'allow wasteful repetition of arguments already briefed, considered and decided.'" *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del. 1990) (quoting *Weissman v. Fruchtman,* 124 F.R.D. 559, 560 (S.D.N.Y.1989)). The court has already held that it will reconsider whether the litigation should continue as a class action when and if it becomes necessary to try the issue of reliance.

An appropriate order will be entered.